James P. Carter (SBN 150052)
James.Carter@jacksonlewis.com
Kelli M. Dreger (SBN 267404)
Kelli.Dreger@jacksonlewis.com
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, CA 92618
Telephone:   (949) 885-1360
Facsimile:   (949) 885-1380

Attorneys for Plaintiff
PERKINELMER HEALTH SCIENCES, INC.,
PERKINELMER GENETICS, INC., and
PERKINLEMER, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERKINELMER HEALTH SCIENCES, INC., a Delaware Corporation, PERKINELMER GENETICS, INC., a Pennsylvania Corporation, and PERKINELMER, INC. a Massachusetts Corporation.<br><br>         Plaintiffs,<br><br>  vs.<br><br>MAHNAZ SALEM, an individual; and DOES 1 through 25, inclusive,<br><br>         Defendants. | CASE NO.: 2:21-cv-1619<br><br>**COMPLAINT FOR:**<br>  1.  **BREACH OF CONTRACT**<br>  2.  **CONVERSION;**<br>  3.  **UNAUTHORIZED ACCESS TO COMPUTER SYSTEMS [Cal. Penal Code § 502(e)(1)];**<br>  4.  **CONSTRUCTIVE TRUST;**<br>  5.  **FRAUD; and**<br>  6.  **NEGLIGENT MISREPRESENTATION.**<br><br>**DEMAND FOR JURY TRIAL**<br>**[F.R. Civ. P. Rule 38; C.D. Cal. Local Rule 38-1]** |

Plaintiffs PerkinElmer Health Sciences, Inc., PerkinElmer Genetics, Inc. and PerkinElmer, Inc. ("PerkinElmer") hereby alleges as follows:

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

## NATURE OF THE CASE

1.     Defendant Mahnaz Salem, who worked for PerkinElmer for 24 days (from January 11, 2021 through February 2, 2021) as Manager of Laboratory Services at a laboratory that performs COVID-19 testing in Valencia, California, emailed herself PerkinElmer's proprietary information in violation of her confidentiality agreement. Moreover, Salem accepted a job with a different competitor laboratory, The Testing Company LLC, on January 14, 2021, breaching her contractual duty of loyalty to PerkinElmer and fraudulently representing to PerkinElmer that she intended to devote all of her business time, attention, skill and effort to the performance of her duties to PerkinElmer.

## PARTIES

2.     Plaintiff PerkinElmer is a leading provider of products, services and solutions for the diagnostics, life sciences and applied markets.   One source of PerkinElmer's business revenue is the operation of COVID-19 testing laboratories.

3.     Plaintiff PerkinElmer Health Sciences, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Waltham, Massachusetts.

4.     Plaintiff PerkinElmer Genetics, Inc. is a corporation organized under the laws of the State of Pennsylvania, with it its principal place of business in Pittsburgh, Pennsylvania.

5.     Plaintiff PerkinElmer, Inc. is a corporation organized under the laws of the State of Massachusetts, with its principal place of business in Waltham, Massachusetts.

6.     Plaintiffs may be referred to collectively as "PerkinElmer."

7.     Upon information and belief, defendant Mahnaz Salem was at all relevant times a resident of the State of California, County of Los Angeles.   From January 11, 2021, through February 4, 2021, Salem performed services for PerkinElmer in Los Angeles County.   At all relevant times, Salem worked as a Manager of Laboratory Services for PerkinElmer at its laboratory in Valencia, California.

**COMPLAINT FOR DAMAGES**

8.    Salem as well as the below defined Does 1-25, may be referred to collectively as "Defendants."

9.    PerkinElmer alleges upon information and belief that at all relevant times each named and unnamed defendant was the agent and/or employee of the other co-defendants, and at all times each defendant was acting within the purpose and scope of such agency and/or employment and with the permission and consent of the other co-defendants with knowledge, authorization, consent, and/or subsequent ratification and approval of each.  PerkinElmer is further informed and believes that each of the named and unnamed defendants knowingly and willfully conspired and agreed among each other to deprive PerkinElmer of its rights and to cause the damages described below.

10.    PerkinElmer is ignorant of the true names of the defendants sued herein as Does 1 through 25, inclusive, and therefore PerkinElmer sues those defendants under such fictitious names.  PerkinElmer alleges upon information and belief that each of the fictitiously named defendants are responsible in some manner for the actions or inactions alleged below.  PerkinElmer will amend this Complaint when the true identities of any Does are ascertained.

## JURISDICTION AND VENUE

11.    Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the Court has diversity over this action.  The action includes claims solely between citizens of the States of Delaware, Pennsylvania, and Massachusetts on the one hand, and a citizen of the State of California on the other hand.  The amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00), as alleged herein.

12.    Venue is proper in this judicial district pursuant to an agreement between the parties that stated that Salem would consent to jurisdiction of any Federal or State Court located in the State of California.

13.    Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(3) as this is a judicial district in which Defendant is subject to the Court's personal

**COMPLAINT FOR DAMAGES**

jurisdiction. Indeed, PerkinElmer is informed and believes, and on that basis alleges that Defendant resides in, and is a citizen of, Los Angeles, California.

## FACTS COMMON TO ALL CAUSES OF ACTION

14.    In or about December 2020, PerkinElmer conditionally offered Salem a position as Manager of Laboratory Services for a laboratory PerkinElmer owns and operates that conducts COVID-19 testing for the State of California in Valencia, California.

15.    As a condition of her employment with PerkinElmer, on December 18, 2020, Salem executed an Employee Patent and Proprietary Information Utilization and Non-Solicitation Agreement ("Agreement"). The Agreement is attached as **Exhibit A**. By the terms of the Agreement, Salem agreed to (1) keep all of Plaintiff's proprietary information confidential, (2) "not copy or remove such materials or copies thereof from [PerkinElmer] premises except in the pursuit of the business of the [PerkinElmer]" and (3) not disclose it to any third parties.

16.    "Proprietary Information" is defined, under the terms of the Agreement as,

"all results, intermediate and final, of the Company's [PerkinElmer's] research activities in which [she] may participate or of which [she] may obtain knowledge during [her] employment, together with business, manufacturing and research methods, including without limitation product designs and specifications; manufacturing procedures and tolerances; research tools; test procedures; prices and pricing formulae; cost information; customers' special materials and product specifications and requirements; information concerning suppliers; sales records; sales reports; customer lists; customer contact reports; and customer records."

17.    Salem also agreed that, during her employment with PerkinElmer, she would "devote all of her business time, attention, skill and effort tot the performance of her duties for PerkinElmer." She agreed "not to engage in, or contract with others to engage in, directly or indirectly, any business or other activity which is in competition with or may reasonably result in competition" with PerkinElmer.

**COMPLAINT FOR DAMAGES**

18.     Since her employment started on January 11, 2021, and in order to perform her duties, PerkinElmer provided Salem with various Proprietary Information. This information included COVID-19 testing results, testing procedures and protocol, and testing equipment capabilities and performance. This information provided by PerkinElmer to Salem during her employment was to be used by her solely in connection with the performance of her work duties and responsibilities with PerkinElmer and for no other purpose.

19.     Salem left PerkinElmer's employment 24-days after she started on February 4, 2021.  In the interim, she accepted a position with a competitor, The Testing Company LLC on January 14, 2021.

20.     On or about February 11, 2021, PerkinElmer discovered that during Salem's employment, she unlawfully and improperly forwarded PerkinElmer's Proprietary Information to her personal email account.  For example, on February 1, 2021 at 1:31 p.m., Salem sent an email from her PerkinElmer email address to her personal email address attaching two documents that were a draft and final version of Quality Exception Reports that reveal, in part, testing procedures, protocol, and results.  As another example, on February 2, 2021 at 9:47 a.m., Salem sent an email from her PerkinElmer email address to her personal email address attaching six documents.  Some of the attachments consisted of PerkinElmer's Standard Operating Procedures for use of one of their testing devices and several drafts thereof. The other documents were user manuals for the same testing device.

21.     PerkinElmer initially attempted to resolve the issues surrounding Salem's theft of PerkinElmer property without having to seek intervention of the Court.  To that end, on or about February 12, 2021, PerkinElmer, made a demand that Salem cease use of PerkinElmer's Proprietary Information, abide by the obligations set forth in the Agreement, and return or indicate it had been destroyed.

22.    On February 18, 2021, PerkinElmer received a nonsensical email response from Salem to its original demand to which PerkinElmer responded clarifying its demands and provided Salem a deadline to abide by February 19, 2021.

23.    When Salem did not return or affirmatively state that she destroyed all Proprietary Information in her possession, PerkinElmer filed the above-captioned action against Salem to seek injunctive relief from this Court.

24.    As a result of Defendants' wrongful conduct, PerkinElmer has been and will continue to be damaged by the actual and threatened loss of its business and Proprietary Information.

25.    Defendants continue to possess PerkinElmer's Proprietary Information to benefit themselves.  Because Salem no longer provides services to PerkinElmer and the Proprietary Information belongs to PerkinElmer, it is not in PerkinElmer's interest for Defendants to possess, have access to, or be permitted to use or disclose the contents of said records and other, Proprietary Information.  Based on the foregoing, Defendants may not possess, use or have access to PerkinElmer's Proprietary Information in any form.

26.    As a direct consequence of Defendants' conduct, PerkinElmer is faced with the substantial risk that Defendants will disclose and continue to disclose or use PerkinElmer's Proprietary Information to PerkinElmer's competitive disadvantage.  As a result of Defendants' actions, PerkinElmer has suffered and will continue to suffer substantial harm including, but not limited to, disclosure and business use of PerkinElmer's Proprietary Information.

27.    Moreover, PerkinElmer has no adequate remedy at law to address the substantial and irreparable harm that it is suffering due to Defendants' misconduct. PerkinElmer therefore seeks injunctive relief as to each of the Defendants to prohibit future use by Defendants of the above-described trade secrets, in addition to damages by their conduct.

/ / /

/ / /

**COMPLAINT FOR DAMAGES**

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Defendants Mahnaz Salem and Does 1 – 25)

28.    PerkinElmer repeats and incorporates by reference into this cause of action the allegations set forth above as though fully set forth in this cause of action.

29.    As a condition of and through their PerkinElmer employment, Salem, as well as Does 1-25, agreed that they would maintain the confidentiality of PerkinElmer's Proprietary Information and that, they would not be permitted to utilize any of PerkinElmer's Proprietary Information for any purpose.    This is reflected in the Agreement attached as **Exhibit A**.

30.    PerkinElmer performed each obligation owed by it under the terms of said agreements, except those obligations that PerkinElmer was prevented from performing due to Defendants' wrongful conduct, as described more particularly above.

31.    Salem, as well as others to be identified as Does 1-25, breached their obligations under the Agreement by (1) emailing herself PerkinElmer's Proprietary Information and (2) contracting with others to engage in, directly or indirectly, any business or other activity which is in competition with or may reasonably result in competition with PerkinElmer.    Said conduct represents a breach of her obligations to PerkinElmer under the terms of the Agreement.

32.    As a direct and proximate result of the wrongful actions and inactions of Salem, and Does 1-25, PerkinElmer alleges upon information and belief that PerkinElmer has been damaged in excess of the jurisdictional minimum of this Court, including general, special, and consequential damages and lost profits, with the exact amount to be proven at time of trial.

## SECOND CAUSE OF ACTION

### (For Conversion against Defendants Mahnaz Salem and Does 1 – 25)

33.    PerkinElmer repeats and incorporates by reference into this cause of action the allegations set forth above as though fully set forth in this cause of action.

COMPLAINT FOR DAMAGES

34.    At all relevant times, PerkinElmer owned and had a right to possess its own Proprietary Information, as identified above and in the Agreement attached as **Exhibit A**. In acting or failing to act as described above, Defendants knowingly and wrongfully assumed unauthorized control, dominion, and ownership over PerkinElmer's Proprietary Information.

35.    PerkinElmer unequivocally did not provide informed consent to Defendants' above-described conduct.

36.    Accordingly, Defendants wrongfully exerted personal control over PerkinElmer's property.  In so doing, Defendants' conduct was a substantial factor in causing harm to PerkinElmer's business, finances, and reputation.  PerkinElmer has demanded that Defendants return the property they wrongfully converted and, to this day, have refused to return any converted property.

37.    As a direct and proximate result of the wrongful actions and inactions of Defendants, PerkinElmer alleges upon information and belief that PerkinElmer has been damaged in excess of the jurisdictional minimum of this Court, with the exact amount to be proven at time of trial.

38.    In acting or failing to act as described above, Defendants acted with oppression, fraud, and malice, and thus PerkinElmer is entitled to an award of punitive damages for the sake of example and by way of punishment.

### THIRD CAUSE OF ACTION

**(For Unauthorized Access to Computer Systems [Pen. Code, § 502, sub. (e)(1)] against Defendants Mahnaz Salem and Does 1 – 25)**

39.    PerkinElmer repeats and incorporates by reference into this cause of action the allegations set forth above as though fully set forth in this cause of action.

40.    At all relevant times, PerkinElmer was the owner of a "computer system," "computer devices," and/or "computer network" containing "data" as defined in Penal Code section 502, subdivision (b).

/ / /

**COMPLAINT FOR DAMAGES**

41.    As described above, PerkinElmer alleges upon information and belief that Salem, as well as Does 1-25, knowingly accessed PerkinElmer's "computer system," "computer devices," and/or "computer network" containing "data" wrongfully and without authorization.

42.    PerkinElmer unequivocally did not provide informed consent to Salem's or any Does' above-described conduct.  As a result, Salem's or any Does' unauthorized access to PerkinElmer's "computer system," "computer devices," and/or "computer network" containing "data" constitutes a violation of Penal Code section 502, subdivision (a).

43.    Accordingly, Salem and Does 1-25 are liable to PerkinElmer for injunctive relief and compensatory damages, including the expenditure reasonably and necessarily incurred by PerkinElmer in verifying that their "computer system," "computer devices," and/or "computer network" containing "data" was or was not altered, damaged, or deleted by the access, pursuant to Penal Code section 502, subdivision (e)(1).

44.    Further, Penal Code section 502, subdivision (e)(2), entitles PerkinElmer to reasonable attorneys' fees and costs upon prevailing in this action.

45.    In acting or failing to act as described above, Salem and Does 1-25 acted with oppression, fraud, and malice, and thus PerkinElmer is entitled to an award of punitive damages for the sake of example and by way of punishment.

## FOURTH CAUSE OF ACTION

### (For Constructive Trust against Defendants Mahnaz Salem and Does 1-25)

46.    PerkinElmer repeats and incorporates by reference into this cause of action the allegations set forth above as though fully set forth in this cause of action.

47.    In acting or failing to act as described above, PerkinElmer alleges upon information and belief that Defendants wrongfully obtained PerkinElmer's Proprietary Information.  Defendants have no legal or equitable right or interest in and to PerkinElmer's Proprietary Information.

**COMPLAINT FOR DAMAGES**

48.     Consequently, Defendants are involuntary trustees holding PerkinElmer's property, and any profits derived therefrom, in constructive trust, with a corresponding duty to convey these assets to PerkinElmer immediately.

## FIFTH CAUSE OF ACTION

### (Fraud/Intentional Misrepresentation against Defendants Mahnaz Salem)

49.     PerkinElmer repeats and incorporates by reference into this cause of action the allegations set forth above as though fully set forth in this cause of action.

50.     Salem willfully misrepresented, concealed and made false promises to PerkinElmer when she entered the Agreement with PerkinElmer and agreed (1) not to copy or remove Proprietary Information or copies thereof from PerkinElmer's premises except in the pursuit of the business of the PerkinElmer, and (2) not to contract with others to engage in, directly or indirectly, any business or other activity which is in competition with or may reasonably result in competition with PerkinElmer.  Salem had no intention of honoring those promises.

51.     Salem willfully misrepresented, concealed and made false promises to PerkinElmer when she emailed herself PerkinElmer's Proprietary Information.

52.     Salem intended for PerkinElmer to rely on these willful misrepresentations to continue her employment with PerkinElmer while also unlawfully benefitting from the use of PerkinElmer's Proprietary Information.

53.     PerkinElmer justifiably relied on the representations made by Salem and because of said reliance, PerkinElmer incurred compensatory damages associated with sharing PerkinElmer's Proprietary Information.

54.     Salem is guilty of oppression and malice justifying an award of punitive damages.

## SIXTH CAUSE OF ACTION

### (Negligent Misrepresentation against Defendants Mahnaz Salem and Does 1-25)

55.     PerkinElmer repeats and incorporates by reference into this cause of action the allegations set forth above as though fully set forth in this cause of action.

**COMPLAINT FOR DAMAGES**

56.    Salem, and Does 1-25, negligently mispresented to PerkinElmer that they would (1) not to copy or remove Proprietary Information or copies thereof from PerkinElmer's premises except in the pursuit of the business of the PerkinElmer, and (2) contract with others to engage in, directly or indirectly, any business or other activity which is in competition with or may reasonably result in competition with PerkinElmer.

57.    Salem and Does 1-25 were negligent when they used PerkinElmer's Proprietary Information and breached their Agreement with PerkinElmer.

58.    Salem and Does 1-25 intended for PerkinElmer to rely on these negligent misrepresentations to continue their employment with PerkinElmer while also unlawfully benefitting from the use of PerkinElmer's Proprietary Information.

59.    PerkinElmer justifiably relied on the representations made by Defendants and because of said reliance, PerkinElmer incurred compensatory damages associated with sharing Proprietary Information and property with Defendants.

60.    Defendants are guilty of oppression and malice justifying an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff PerkinElmer respectfully requests that this Court:

1.    For general, special, compensatory, and/or consequential damages and lost profits on behalf of PerkinElmer in excess of the jurisdictional minimum of this Court, with the exact amount to be proven at time of trial;

2.    For pre-judgment interest at the maximum legal rate in an amount to be proven at time of trial;

3.    For punitive damages according to proof;

4.    For exemplary damages pursuant to Civil Code section 3426.3, subdivision (c);

5.    For a judicial declaration that Defendants hold PerkinElmer's assets, as well as a disgorgement of all funds, assets, and business opportunities unjustly acquired, as constructive trustees for PerkinElmer's benefit;

**COMPLAINT FOR DAMAGES**

6.    For an injunction ordering Defendants to stop unfairly competing with PerkinElmer, to prohibit use of PerkinElmer's trade secrets, and to prohibit further unauthorized access to its computer systems or related data;

7.    For an appointment of a receiver to perform an accounting of all monies owed to PerkinElmer;

8.    For attorneys' fees and costs; and

9.    For such other relief as the Court deems just and proper.


Dated: February 22, 2021                    JACKSON LEWIS P.C.



                                            /s/ *Kelli M. Dreger*
                                            James P. Carter
                                            Kelli M. Dreger

                                            Attorneys for Plaintiffs
                                            PERKINELMER HEALTH SCIENCES,
                                            INC., PERKINELMER GENETICS, INC.,
                                            and PERKINLEMER, INC.

**COMPLAINT FOR DAMAGES**