Dr. Mahnaz Salem
10600 Wilshire Blvd # 433
Los Angeles, CA 90024
Salemmahnaz20@gmail.com
(424) 354-6899
In Pro Per

FILED
CLERK, U.S. DISTRICT COURT

MAR 15 2021

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PERKINELMER HEALTH SCIENCES, INC., et al.

         Plaintiffs

     v.

MAHNAZ SALEM, et.al.

         Respondent/Defendant

Case No.: 2:21-CV-01619-DMG-KS

**ANSWER**

**<u>TO ALL PARTIES AND THEIR COUNSEL OF RECORDS</u>**

Defendant/Respondent Dr. Mahnaz Salem (hereinafter refer to as: Mahnaz Salem) hereby answers to Plaintiff's allegations as follows:

Answer - 1

## ANSWER TO THE "NATURE OF THE CASE"

1.    This is not true. Mahnaz Salem who was recruited by Plaintiff, was terminated over announcing her intent to resign, and emailed herself and several others (including the Testing Company) upon their request, the information available as "Public Records". Mahnaz Salem devoted most of her time during the period of 24 days as the manager of the Valencia COVID-19 Testing Laboratory entitled as: "California Department of Public Health (hereinafter referred to as CDPD Powered by Perkin Elmer" as shown on the entrance of the above entity. Mahnaz Salem did so upon request from the above laboratory's upper management to start reviewing their various out of compliance records. Such conditional non-compliance situation was not disclosed to her during various interviews (Video-Captured) prior to her accepting the job offer which was provided to her on Perkin Elmer's logo. Plaintiff should have submitted its offer of employment with only CDPH logo. It is not acceptable to put another entity's logo. The offer of employment must clearly identify the owner of the laboratory that performed the test. Plaintiff fraudulently informed Mahnaz Salem that the laboratory was in compliance with all of the applicable laws despite the fact that it had complete knowledge of its non-compliance conditional situation as one of its records entitled: "CDPH Branch Laboratory: Pending list, questions and reminders" (date downloaded into the Compliance database: 12/07/2020 at 11:02am) clearly showed its non-compliance. Plaintiff failed to disclose the above until the records were partially reviewed upon Plaintiff itself authorizing Mahnaz Salem to access and have such information considering her sensitive position to review, assess, and assist. This is reflected in the "Reminder of Confidentiality Obligation" attached as Exhibit A (Paragraph 4 of page 1). Plaintiff indicated its intention to bring a claim against Mahnaz Salem at the same time it requested that she remove and/or delete all evidences she had in her possession. Plaintiff had orally distributed such intention prior to February 11, 2021 via its employees and agents. Mahnaz Salem was not ~~only sleepless but also speechless when she devoted her time to help Plaintiff who initially committed~~ fraud as described above.

## ANSWER TO THE "PARTIES"

2.   This is true. Perkin Elmer manufactures and distributes equipment and test kits on a global basis, and has exhibited itself to follow all of its obligations, including requirements under all applicable laws.

7.   This is true. Mahnaz Salem is the resident of the State of California.

At all relevant times during the 24 days of her employment at the above entity, Mahnaz Salem informed Plaintiff that such position and offer needed to be revisited. Plaintiff's various fraudulent misrepresentations up to the last day and last minutes Mahnaz Salem worked at the above facility are evidenced in various records.

9. This is not true. Mahnaz Salem is further informed and believes that Plaintiff in concert with third parties, including The Testing Company (the last and former employer of Mahnaz Salem who offered her a Part Time position in Research and Development leadership capacity to be able to survive post COVID-19 Pandemic), harassed and retaliated against her. Testing Company is a COVID-19 testing laboratory initially set up with the assistance of a California Technical Consultant being a former member of CA Clinical Laboratory Advisory Committee (CLTAC), a former official of CDPH (Laboratory Field Services Branch), and a former CA Public Health Laboratory Director.

10. As instructed by the Honorable Court's Initial Standing Order dated February 25, 2021, Plaintiff must file a motion to amend its Complaint. Plaintiff has not only served its Complaint improperly, but failed to serve the above Standing Order. Plaintiff's Counsel of records has also failed to respond and reply to Mahnaz Salem. This has been an ongoing issue concerning these orchestrated scenarios for the last many years due to involvement of various interested parties. Plaintiff is currently soliciting individuals and entities, including conducting a semi "Phishing Scamming" via its IT personnel to identify other employees who have been abused and/or reported its non-compliance, so that it could amend its frivolous, non-meritorious, and unsubstantiated claims in concert with various others as stated above. There is approximately 25 years of abuse by the personnel network as Mahnaz Salem has been working for the division of Clinical Laboratory within the State of California.

## ANSWER TO THE "JURISDICTION AND VENUE"

11. This is true. Jurisdiction is proper. Mahnaz Salem has also shown her intent to bring a request for an Injunctive Relief to this Court, and now has intent to file a Cross-Compliant identical to this Complaint against the Plaintiff. Plaintiff is well aware of various past pleadings, including the one closed at the CA State Superior Court by Mahnaz Salem (short title: "Salem vs. CFHS Holdings") filed in September 2016 after various orchestrated frame-ups by the laboratory personnel network and their supporters who also caused Mahnaz Salem to leave the job she had at the State of California. The records Mahnaz Salem holds in her possession have revealed connections between a claim for property damage, and her other employments in various capacities post CFHS Holdings.

Due to the respect to the CLIA Program, Mahnaz Salem did not take any action when she resigned from her job at CDPH.

It is not true that the amount in controversy for this claim exceeds $75000 as alleged by Plaintiff. Plaintiff's unsubstantiated claim is of a Zero-Dollar value.

12. This is not true. Section 2 of Plaintiff's EPPIUA (updated October 05, 2016) defines Proprietary Information as Company's research activities. Plaintiff was reminded by Mahnaz Salem who upon review and identification of non-compliance issues (refer to as "Lemon Picking") documented such issues to draw a line between its Research Use Only activities in its CA State registered CLIA certified Clinical Laboratory (provided to Plaintiff conditionally) where Plaintiff was performing experimental studies at the same time it was reporting patient test results to troubleshoot its "Condition Non Compliance" situation. Mahnaz Salem has all rights to report the above to Governmental agencies, including providing records which are not part of public records.

13. This is true. Mahnaz Salem resides in Los Angeles, and is a Citizen of the United States effective 2005 when she was awarded US Citizenship during the Honorable Bush's administration. Plaintiff and the parties in connection with are hoping to finally be able to indirectly deport Mahnaz Salem from the United States as this has been alluded in the past by members from specific Political party. Mahnaz Salem will hold the specific leadership as a responsible party allowing these types of behaviors to be continued.

**ANSWER TO THE "FACTS COMMON TO ALL CAUSES OF ACTION"**

14. This is not true. Mahnaz Salem is informed and hereby alleges that the Valencia COVID-19 Testing Laboratory is owned by CDPH according to the Disclosure of Ownership filed by Plaintiff. Indeed, Plaintiff was exercising efforts to circumvent when it was notified about its non-compliance situation upon resignation of CDPH Laboratory Director who resigned from being the CLIA Director. Plaintiff put efforts to stress the situation on CDPH if it would be sued.

15. This is true as explained above.

17. This is not true. Mahnaz Salem never agreed orally or in writing to work 24 hours a day for Plaintiff who manipulated the situation prior and after offering her the employment as described above. Plaintiff fraudulently planned to have its various Conditional problems be resolved by the speedy and inexpensive bypass method it elected.

18. This is true. Indeed, Mahnaz Salem having been provided with the sensitive Clinical Laboratory Compliance information did not violate Cal Penal Code 502(e)(e)(1), and Plaintiff itself provided her with authorization to access such information, but started its abuse including the orchestrated frame-up of "termination over resignation intent" when its various issues it was trying to keep as Top Secrets were surfaced and documented.

19. This is not true. Mahnaz Salem offered Plaintiff to assist them for anytime period desired as a competent CA Consultant or on a modified position basis; was wrongfully terminated, and was finally constructively terminated from the Testing Company due to Plaintiff's improper behaviors. This issue has been an ongoing issue since 1997 when the same false accusations were publicly published within the division of Clinical Laboratory at the State of California. Plaintiff is responsible to pay all damages incurred due to its various abuses and by publicly drawing and/or demonstrating a monster of a person who assisted them and did not provide harm to anyone.

20. This is true as also explained in 1 above.

21. This is not true. As soon as Plaintiff's non-compliance and Frauds were exposed by various other employees witnessing such, Plaintiff started making threats and published defamatory information as its employees and agents did the same about Mahnaz Salem prior to February 04, 2021.

22. This is not true. Plaintiff was replied to its threatening email in order for Mahnaz Salem to better understand which source its behaviors were directed by.

23. This is true. Plaintiff filed this claim as soon as Mahnaz Salem informed the Testing Company that Plaintiff had initiated harassments. She also expressed her intent to file an Injunctive Relief.

24. This is not true. Plaintiff's loss of business (if any) is a direct result of its own illegal and unacceptable conduct.

25. This is not true. Mahnaz Salem does have all the rights to expose Plaintiff's non-compliance and frauds to Governmental agencies and now to the public by demonstrating Plaintiff's method of abuse of Court system being an abusive and retaliatory conduct.


WHEREOF, Plaintiff's artificial tears are to buy reputation and to cover its unacceptable method of practice as stated above, all causes of actions are therefore non-meritorious, and unsubstantiated. Plaintiff is guilty of Fraud, Oppression, and Malice exercising this method of abuse of Court system to publicly destroy people and to extort money. The entire action should be dismissed by the Honorable Court, and Plaintiff should be ordered to pay punitive damages to anyone suffering from its unlawful conduct.

DATED: March 11, 2021

Dr. Mahnaz Salem

# EXHIBIT A



**PerkinElmer**
*For the Better*

PerkinElmer
940 Winter Street
Waltham, MA 02451
USA

Phone: 781-663-6900
www.perkinelmer.com

February 11, 2021

**VIA FEDEX AND ELECTRONIC MAIL**
Mahnaz Salem
10600 Wilshire Blvd # 433
Los Angeles, CA 90024

RE:    **Reminder of Confidentiality Obligations**

Dear Ms. Salem:

As of February 4, 2021, you voluntarily ended your employment with a subsidiary of PerkinElmer, Inc. I understand that your current employer is a competitor of PerkinElmer's. In addition, PerkinElmer has become aware that prior to your separation from PerkinElmer, you emailed a significant volume of PerkinElmer's highly confidential information to a private email account. As such, I am writing this letter to you both to remind you of your continuing obligations to PerkinElmer pursuant to your Employee Patent and Proprietary Information Utilization Agreement executed on December 18, 2020 ("**EPPIUA**"), a copy of which I have enclosed with this letter, and to demand that you immediately return or destroy all PerkinElmer confidential information in your possession.

In Section 2 of the EPPIUA, it states that you agree "…to treat Proprietary Information [as defined in the EPPIUA] as confidential both during [your] employment and thereafter…" I want to remind you that much of the information that was entrusted to you as an employee of PerkinElmer is Proprietary Information relating to PerkinElmer's clients and customers, PerkinElmer's business operations and methods, PerkinElmer's pricing and finances, and/or trade secrets, which you cannot divulge to third parties, including your current employer, or utilize in any manner following your last day of employment.

Please return all written information relating to PerkinElmer's business affairs, finances, customers (including customer lists, opportunities and contact information), or other Proprietary Information, immediately.  Please immediately delete any electronic copies of such information (including, but not limited to, customer contact names, phone numbers, e-mail addresses, and other client information), such as on a computer hard drive, disk, cell phone, tablet, or other electronic storage media. If you need assistance in removing electronically stored information, please contact us for assistance and we will assist you with deleting this information. Please note that even after following the aforementioned steps, you should not use PerkinElmer's Proprietary Information or disclose such information to your new employer or any other third party.

PerkinElmer treats the unauthorized use of its confidential information seriously.  The sensitivity of your position with PerkinElmer, including access to health information, makes your unlawful

diversion of PerkinElmer's Proprietary Information all the more concerning.  Any use of PerkinElmer's Proprietary Information by you or any third party (including your current and future employers) may cause irreparable harm to PerkinElmer.  We encourage you to review and comply with your obligations under your EPPIUA.

Please note that nothing in this letter shall be construed as a waiver of any right, claim, or action that PerkinElmer may have with respect to the matters addressed herein, all of which are expressly reserved. Please also note that we will be including a copy of this letter in your personnel file and will make it available to your new employer to ensure that they are aware of your obligations. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Joel Goldberg
*SVP, General Counsel*

CC:    Personnel File
       PerkinElmer Legal Department

Enc:    Executed EPPIUA

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR 15 2021

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

Reusable

RT 787
FZ
1
10:30  A
8134
03.15

ORIGIN ID:SMOA  (424) 354-6899
MANHAZ SALEH
10600 WILSHIRE BLVD APT 433

LOS ANGELES, CA 90024
UNITED STATES US

SHIP DATE: 12MAR21
ACTWGT: 0.20 LB
CAD: 6996053/SSFD2121

BILL CREDIT CARD

TO  CLERKS OFFICE
US DISTRICT COURT
255 E. TEMPLE ST. WESTERN DIVISION
ROYBAL FEDERAL BLDG
LOS ANGELES CA 90012

TRK#
0201   7846 5280 8134

WZ EMTA

MON - 15 MAR 10:30A
PRIORITY OVERNIGHT

90012
CA-US  LAX

FedEx
Express

E



Align bottom of peel-and-stick airbill or pouch here.