James P. Carter (SBN 150052)
James.Carter@jacksonlewis.com
Kelli M. Dreger (SBN 267404)
Kelli.Dreger@jacksonlewis.com
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, CA 92618
Telephone:   (949) 885-1360
Facsimile:    (949) 885-1380

Attorneys for Plaintiff
PERKINELMER HEALTH SCIENCES, INC.,
PERKINELMER GENETICS, INC., and
PERKINLEMER, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERKINELMER HEALTH SCIENCES, INC., a Delaware Corporation, PERKINELMER GENETICS, INC., a Pennsylvania Corporation, and PERKINELMER, INC. a Massachusetts Corporation.<br><br>    Plaintiffs,<br><br> vs.<br><br>MAHNAZ SALEM, an individual; and DOES 1 through 25, inclusive,<br><br>    Defendants. | CASE NO.: 2:21-cv-1619-DMG-KS<br> Assigned to the Hon. Dolly M. Gee<br><br>**PERKINELMER HEALTH SCIENCES, INC., PERKINELMER GENETICS, INC., and PERKINELMER, INC.'s NOTICE OF MOTION AND MOTION FOR CONTEMPT FOR DEFENDANT'S FAILURE TO COMPLY WITH COURT'S PRELIMINARY INJUNCTION ORDER; REQUEST FOR MONETARY SANCTIONS; AND, REQUEST FOR \$9,464.50 IN ATTORNEY'S FEES**<br><br>[Filed Concurrently With: Declarations of James P. Carter and Kelli M. Dreger; [Proposed] Order]<br><br><u>Hearing</u><br>Date: July 2, 2021<br>Time: 9:30 a.m.<br>Ctrm: 8C<br><br>Complaint Filed: February 22, 2021 |

TO THE HONORABLE DOLLY M. GEE, HER COURT CLERK, AND TO DEFENDANT:

PLEASE TAKE NOTICE that Plaintiffs PerkinElmer Health Sciences, Inc., PerkinElmer Genetics, Inc. and PerkinElmer, Inc. ("PerkinElmer") hereby moves for an order directing defendant Mahnaz Salem ("Salem") to show cause why she should not be held in contempt of this Court for violating this Court's April 9, 2021 Preliminary Injunction order (the "Injunction").

PLEASE TAKE FURTHER NOTICE that PerkinElmer requests that the Court levy a coercive monetary sanction in the amount of $500 per day payable to the Court unless, within five (5) days of the Court's order holding Defendants in contempt, Defendant files a report under oath establishing full and complete compliance with the Injunction.

PLEASE TAKE FURTHER NOTICE that PerkinElmer requests that the Court award reasonable attorneys' fees in the amount of $9,464.50, incurred in bringing this Motion and attending the Status Conference re Salem's non-compliance with the Injunction. Declaration of Kelli M. Dreger, ¶ 7; Declaration of James P. Carter, ¶¶ 3-4.

This motion is made on the grounds that on May 19, 2021 at the Status Conference with Magistrate Judge Karen L. Stevenson, Salem admitted that she has willfully violated the Injunction by: (1) destroying evidence; (2) not identifying all persons to whom she disclosed PerkinElmer's confidential information; (3) not turning over all devices she connected to her PerkinElmer computer to Booz Allen Hamilton ("BAH") for a forensic investigation; and, (4) not giving BAH timely access to her email and iCloud account so that BAH could collect its data from those accounts. During the May 19, 2021 Status Conference Salem testified that she threw a USB device that contained PerkinElmer information confidential information into the Pacific Ocean. She also declined to give access to an iCloud account and told the Court she was shutting down her email so that no one could access it.

This Motion is based upon this Notice of Motion itself, the following

1  memorandum of points and authorities, the Declarations of Kelli M. Dreger and James P.

2  Carter, and the accompanying exhibits, and the record and pleadings on file.

3

4  Dated: June 4, 2021                    JACKSON LEWIS P.C.

5

6

7                                        /s/ *Kelli M. Dreger*
                                         James P. Carter
8                                        Kelli M. Dreger

9                                        Attorneys for Plaintiffs
10                                       PERKINELMER HEALTH SCIENCES,
                                         INC., PERKINELMER GENETICS, INC.,
11                                       and PERKINLEMER, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Contents

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF RELEVANT FACTS .............................................. 2

III.   ARGUMENT ....................................................................................... 7

       A.    Authority to Grant this Motion ................................................. 7

       B.    Salem Should Be Held in Contempt ......................................... 8

             1.    Salem Has Violated the Injunction ................................ 8

             2.    Salem Has Not Substantially Complied With The Injunction ............ 9

             3.    Salem's Conduct Is Inconsistent With A Good Faith and Reasonable Interpretation of the Injunction ....................... 10

             4.    The Evidence of Salem's Violations Is Clear and Convincing .......... 10

       C.    The Court Should Levy a Coercive Fine Until Salem Complies With the Injunction ........................................................... 10

       D.    The Court Should Award PerkinElmer its Attorneys' Fees .......................... 11

IV.    CONCLUSION ................................................................................. 12

# Table of Authorities

**Page(s)**

**Federal Cases**

*Boyle v. Lorimar Prods.*,
  Nos. 91-56381, 91-56488, 1994 U.S. App. LEXIS 888 (9th Cir. Jan. 11,
  1994) ...................................................................................................... 10

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991).................................................................................... 7

*China Cent. Tv v. Create New Tech. (HK) Ltd.*,
  2015 U.S. Dist. LEXIS 152218 (C.D. Cal. November 4, 2015) ................ 11

*In re Crystal Palace Gambling Hall, Inc.*,
  817 F.2d 1361 (9th Cir. 1987) ................................................................... 7

*Dominguez v. Osorio*,
  2017 U.S. Dist. LEXIS 230132 (C.D. Cal. June 6, 2017)......................... 10

*F.J. Hanshaw Enter., Inc. v. Emerald River Dev., Inc.*,
  244 F.3d 1128 (9th Cir. 2001) ................................................................... 7

*Fed. Trade Commission v. Productive Marketing, Inc.*,
  136 F.Supp.2d 1096 (C.D. Cal. 2001) ....................................................... 9

*Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc. v. Multistate
  Legal Studies, Inc*. (9th Cir. 1994)
  26 F.3d 948 ............................................................................................... 11

*Labor/Cmty. Strategy Ctr. v. Los Angeles County Metropolitan Transp.
  Authority*,
  564 F.3d 1115 (9th Cir. 2009) ................................................................... 8

*Nat'l Comm'n v. Cal. Crane Sch. Inc.*,
  No. CV 08-05440-JVS, 2010 U.S. Dist. LEXIS 148691 (C.D. Cal. May
  19, 2010) ................................................................................................... 11

*Reed v. Fannie Mae*,
  2019 U.S. Dist. LEXIS 221041 (C.D. Cal. Dec. 4, 2019)................... 10, 11

*Spallone v. United States*,
  493 U.S. 265 (1990).................................................................................... 7

*Stone v. City and Cnty of S.F.*,
    968 F.2d 850 (9th Cir. 1992) ........................................................................ 8

*United States v. Ayres*,
    166 F.3d 991 (9th Cir. 1999) ................................................................. 10, 11

*United States v. United Mine Workers of America* (1947)
    330 U.S. 258 .......................................................................................... 10

**Other State Statutes**

CA Penal Code
    § 502(e)(1), (4) ............................................................................................ 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I. <u>INTRODUCTION</u>

Defendant Mahnaz Salem ("Salem") should be held in contempt and sanctioned because she brazenly violated the Court's April 9 Order granting PerkinElmer's Motion for Injunctive Relief ("Injunction"). In fact, during a May 19, 2021 hearing on the status of Salem's non-compliance with the Injunction, Salem (1) admitted to disposing of the original USB that contained PerkinElmer data in the Pacific Ocean, (2) asked the Court to take her into custody, (3) admitted that she stole documents, (4) accused the Court of harassing her, (5) declared that she would no longer be cooperating with the Court, and (6) left during the middle of the hearing. *See generally* Declaration of Kelli M. Dreger ("Dreger Decl."), ¶ 4, Exhibit B.  Salam's behavior was so flagrant and atrocious that the Honorable Magistrate Judge Karen L. Stevenson stated that she has "been clearly uncooperative with the Court. And I think the Plaintiff's recourse at this point is to file your motion for contempt." Dreger Decl., ¶ 4, Exhibit B at 47:8-10.

Salem has violated the Injunction by (1) destroying evidence, (2) failing to disclose to PerkinElmer in a sworn written statement *all persons* she disclosed or transferred PerkinElmer's proprietary information, (3) failing to turn over to BAH *all* devices in her possession containing data or documents she took from PerkinElmer, and (4) failing to permit BAH to access her personal email and cloud-based storage accounts covering the period from January 11, 2021 through the present.[1]

As a result, she should be held in contempt and the Court should levy a fine against Salem until she complies with the Injunction. Given her willfully flagrant abuse of the judicial system, she should also have to pay PerkinElmer reasonable attorney fees incurred in causing PerkinElmer to attend the May 19th hearing and, bringing this Motion.

---

[1] Though she provided a password for her personal email account at the May 19th hearing to the Court and PerkinElmer's counsel, she also represented that she was closing access to her account that day. Similarly, she provided an additional USB and her iPhone at the May 19th hearing.  However, as of the date this Motion was filed, it is unknown (1) if Booz Allen Hamilton could access her gmail or iPhone and (2) what the forensic examination of the latest USB reveals.  Dreger Decl., ¶ 6.

## II.    STATEMENT OF RELEVANT FACTS

Salem worked for PerkinElmer for 24 days from January 11, 2021 to February 4, 2021, during which she systematically identified, accessed, collected, and emailed herself dozens of emails containing PerkinElmer's Proprietary Information.[2]  Dk. No. 17-4, Klubenspies Decl., ¶ 3, Exh. C; Dk. Nos. 23 and 38-2.

On February 22, 2021, PerkinElmer filed its Complaint seeking damages and injunctive relief as a result of Salem's theft of PerkinElmer's Proprietary Information.  As a result, Salem (1) breached her contract with PerkinElmer, (2) converted its property, (3) accessed its computer systems in violation of Penal Code § 502(e)(1), (4) holds its Propriety Information in constructive trust, (5) made fraudulent representations and, (6) made negligent misrepresentations. Dk. No. 1.

On March 26, 2021, PerkinElmer moved for an Injunction.  Dk. No. 17. In support of it, PerkinElmer submitted 50 emails showing that Salem forwarded herself PerkinElmer's proprietary research, testing procedures and protocols, and testing equipment capabilities and performance. Dk. No. 17-4, Klubenspies Decl., ¶ 3, Exh. C. On April 7, 2021, PerkinElmer submitted additional evidence in support of its Injunction from computer forensic examiners, Booz Allen Hamilton ("BAH"). Dk. No. 23 (sealed). BAH's report revealed that Salem copied 2,818 of PerkinElmer files to external storage media devices (3 USBs and her iPhone) on January 22, 2021 and February 1, 2021. *Id.*

On April 9, 2021, the Court granted PerkinElmer's Injunction against Defendant. Dk. No. 32. The April 9th Injunction states,

"In light of the foregoing, PerkinElmer's MPI is **GRANTED**. The Court hereby **ORDERS** that:

1.    Salem shall not use, disclose, or access documents or files containing information that she took from PerkinElmer;

---

[2] "Proprietary Information" is defined by the Employee Patent and Proprietary Information Utilization and Non-Solicitation Agreement signed by Plaintiff. *See* Motion Dk No. 17-1, Section II.A.

2.    Salem shall not destroy any remaining evidence of her copying, taking, or use of PerkinElmer's proprietary information;

3.    By **April 13, 2021**, Salem shall disclose to PerkinElmer in a sworn written statement to whom, if anyone, she disclosed or transferred PerkinElmer's proprietary information, so that PerkinElmer may prevent further disclosure or use—intentional or accidental—by third parties;

4.    Consistent with this Order, PerkinElmer shall prepare a proposed Protective Order (by stipulation, if possible) relating to any data, documents, or physical items obtained through discovery or court order in this case and submit it for the Court's review and consideration by no later than April 12, 2021;

5.    Provided that a Protective Order has been entered by that date, by April 13, 2021, Salem shall turn over to Booz Allen Hamilton, for no more than three business days, any devices in her possession containing data or documents she took from PerkinElmer, solely to allow PerkinElmer to have a forensic image taken of those devices to determine what proprietary information was misappropriated. Salem shall also permit Booz Allen Hamilton to access her personal email and cloud-based storage accounts covering the period from January 11, 2021 through the present for the same purpose and duration. PerkinElmer and/or Booz Allen Hamilton shall take reasonably necessary steps to facilitate this transfer. PerkinElmer and Booz

Allen Hamilton shall not disclose or use any of Salem's personal information that does not belong to PerkinElmer and that they may incidentally discover or gain access to during their investigation;

6.      By April 30, 2021, the parties shall file a Joint Status Report indicating the progress of compliance with this Order and the status of this litigation; and

7.      PerkinElmer shall file proof of service of this Order upon Salem by April 13, 2021."[3]

On April 12, 2021, Salem required PerkinElmer to pick up a USB at her apartment complex. Dreger Decl., ¶ 3. Salem refused to meet with BAH and refused to provide access to the devices she connected to her PerkinElmer computer. *Id.* at ¶ 3, Exhibit A. BAH's analysis of the device revealed that Salem created the device on April 9, 2021 and it did not have the same serial number as any of the other three USBs she had connected to her PerkinElmer computer. Dk. No. 38-2. She never provided BAH with access to her email or iCloud account either. Dreger Decl., ¶ 3.

Despite her defiance, BAH completed its analysis of the April 9, 2021 USB on April 26, 2021 which revealed:

- Of the 888 files that were identified in the original forensic examination of Salem's PerkinElmer Computer ("Original Report"),[4] 884 were on the newly created USB. Thus, at least 4 files were missing.

- Salem had *another 618 files* that were not included in the Original Report. Dk. No. 38-2.

---

[3] PerkinElmer has complied with Order Nos. 4, 6, and 7. Dreger Decl., ¶ 3.
[4] BAH's original report was based on PerkinElmer's Endpoint Detection and Response (EDR) system which showed 2,818 items had been created, modified, renamed, or deleted from Salem's PerkinElmer computer to an external device. Though there were 2,818 entries on the EDR listing spreadsheet, only 888 of the 2818 contain a "SHA-1 hash value" (an item that has some sort of contents as opposed to an item that is merely a directory, or newly created 0 byte files). Dk. No. 38-2.

On April 30, 2021, PerkinElmer filed its Status Report revealing that Salem had not complied with the Injunction. Dk. No. 38. On May 4, 2021, Judge Gee ordered that the parties scheduled an appearance in front of Magistrate Judge Karen L. Stevenson to discuss Salem's compliance with the Injunction. Dk. No. 41. On May 6, 2021, Judge Stevenson ordered the parties appear on May 19, 2021. Dk. No. 42.

At the hearing on May 19, 2021, Salem asked to be taken into custody several times and she admitted she stole PerkinElmer's documents. Dreger Decl., ¶ 4, Exhibit B at 36:7-14.

She was also was placed under oath and asked questions by Judge Stevenson. During the questioning, Salem produced an additional USB and her iPhone during the hearing. But, she clearly has not produced *all* devices in her possession containing data or documents she took from PerkinElmer because she admitted to disposing of the original USB in the Pacific Ocean:

> THE COURT: OKAY.
>
> HAVE YOU DESTROYED ANY REMAINING EVIDENCE THAT YOU COPIED, TOOK OR USED OF PERKINELMER'S PROPRIETARY INFORMATION?
>
> MS. SALEM: THERE WAS -- THE DATA WAS ON A DISPOSABLE FLASH WHICH I COPIED EXACTLY TO THE COUNSEL ALL THE DATA. **AND I JUST DISPOSED IT IN THE PACIFIC OCEAN BECAUSE I DIDN'T NEED THAT**.
>
> THE COURT: WELL, LET ME ASK YOU THIS. DO YOU STILL HAVE -- YOU SAID THE DATA WAS COPIED ON TO A DISPOSABLE FLASH -- ON TO A FLASH DRIVE. AND YOUR TESTIMONY IS YOU PROVIDED THAT FLASH DRIVE TO COUNSEL FOR PERKINELMER --

MS. SALEM: COPIED AS THEY REQUESTED, YES.[5]

THE COURT: OKAY.

WHERE IS THE ORIGINAL FLASH DRIVE THAT YOU COPIED IT FROM?

MS. SALEM: **IT'S DESTROYED**. I JUST HAVE THE COPY OF EXACTLY WHAT I GAVE TO THEM AND THEY RETURN TO ME.

[…]

THE COURT: ALL RIGHT. JUST A SECOND.

THE – THERE WAS AN INDICATION I BELIEVE THAT YOU HAD THREE USBS THAT HAD BEEN CONNECTED TO THE PERKINELMER COMPUTER.

DO YOU HAVE ANY OF THOSE THREE USBS OR JUST THE ONE THAT YOU THREW IN THE OCEAN?

MS. SALEM: **THE ONE THAT THEY HAD THAT I THREW IN THE OCEAN THAT THEY NEEDED BECAUSE I DIDN'T WANT TO ACTUALLY GO ON WITH THIS THIS CRAP**.

Dreger Decl., ¶4, Exhibit B at 21:9-22:1, 30:14-21 (emphasis added).

Toward the end of the hearing, Salem provided a password for her personal email account however, she had previously testified multiple times that she was closing her email account after the hearing that day:

THE COURT: OKAY.

AND IS YOUR EMAIL WITH GMAIL, YAHOO?

[…]

MS. SALEM: YES. IT'S THE GMAIL. AND THEY REQUESTED THEY CAN HAVE IT FROM GOOGLE OR

---

[5] PerkinElmer's counsel never asked for a copy of the data as Salem claims. Dreger Decl., ¶ 3.

MICROSOFT OR ANYONE ELSE.

THE COURT: WHEN SOMEONE SENDS YOU AN EMAIL, IF YOU HAVE TO GO TO FED EX OR KINKOS –

MS. SALEM: **IT'S GOING TO BE CLOSED TODAY. THAT EMAIL ACCOUNT THAT YOU HAVE IS GOING TO BE CLOSED OUT.**

THE COURT: WELL, THAT –

MS. SALEM: **I'M NOT GOING TO BE ACCESSING ANY EMAIL, ANY PHONE JUST TO GIVE THE COURT MY POSITION TODAY.**

Dreger Decl., ¶ 4, Exhibit B at 24:1-17; *see also* 32:22-23.

, she said that she was not going to participate or cooperate with the Court anymore (including her attendance at ADR or trial). Dreger Decl., ¶ 4, Exhibit B at 26:16-22, 29:7-16, 34:17-19, 36:23-24, 40:12-14, 40:25-41:7.

At the end of the hearing, Judge Stevenson stated that Salem's "been clearly uncooperative with the Court. And I think the Plaintiff's recourse at this point is to file your motion for contempt." Dreger Decl., ¶ 4, Exhibit B at 47:8-10. As such, this Motion followed receipt of the transcript.

### III. ARGUMENT

#### A. Authority to Grant this Motion

A district court has the inherent power to enforce its orders and ensure compliance with its mandates. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *F.J. Hanshaw Enter., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001). Thus, this Court has the inherent power to enforce its Injunction through civil contempt. *Spallone v. United States*, 493 U.S. 265, 276 (1990). If a party disobeys a specific and definite court order, that party may properly be adjudged in contempt. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987).

The test for determining civil contempt is well settled in the Ninth Circuit. The district court must determine "whether the defendants have performed all reasonable steps within their power to ensure compliance with the court's orders." *Stone v. City and Cnty of S.F.*, 968 F.2d 850, 856 (9th Cir. 1992). "For issuance of a contempt order to be proper, [the movant] must establish '(1) that [the other party] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence.'" *Labor/Cmty. Strategy Ctr. v. Los Angeles County Metropolitan Transp. Authority*, 564 F.3d 1115, 1123 (9th Cir. 2009)

## B.    Salem Should Be Held in Contempt

### 1.    Salem Has Violated the Injunction

Salem has brazenly violated the injunction by (1) destroying evidence, (2) failing to disclose to PerkinElmer in a sworn written statement *all persons* she disclosed or transferred PerkinElmer's proprietary information, (3) failing to turn over to BAH *all* devices in her possession containing data or documents she took from PerkinElmer, and (4) failing to permit BAH to access her personal email and cloud-based storage accounts covering the period from January 11, 2021 through the present.

Salem admitted at the hearing on May 19 that she knowingly destroyed evidence when she testified that she threw one USB that contained PerkinElmer documents into the Pacific Ocean and that she was going to closing her email account.

Salem also failed to "disclose to PerkinElmer in a sworn written statement to whom, if anyone, she disclosed or transferred PerkinElmer's proprietary information, so that PerkinElmer may prevent further disclosure or use—intentional or accidental—by third parties[.]" Dk. No. 32. Salem swore that she disclosed PerkinElmer's proprietary information *only* to Julie Watts (CBS) and Manooshak Chachateryan. Dreger Decl., ¶ 5, Exhibit C. Yet, PerkinElmer knows that she disclosed its proprietary information to The Testing Company (Salem's post-PerkinElmer employer) and its agents. Dreger Decl., ¶ 4, Exhibit B at 47:8-10.

On May 4, 2021, PerkinElmer's counsel asked Salem if she needed to add anyone else to this list because she omitted The Testing Company. Salem responded on May 5, 2021 at 8:23 a.m.:

> "The information provided to the Testing Company was already indicated in your own pleading when you had communicated with their Counsel. Also, please direct all your additional concerns to the US District Court concerning the information in the emails."

Dreger Decl., ¶ 3, Exhibit A.

Finally, Salem did not give BAH access to all (or any of) the devices she used to steal PerkinElmer's confidential data, nor did she give BAH access to her gmail or iCloud account.[6] These actions violate the Injunction.

### 2.    Salem Has Not Substantially Complied With The Injunction

"Substantial compliance" with the Injunction is a defense to civil contempt and is shown "where every reasonably effort has been made to comply." *Fed. Trade Commission v. Productive Marketing, Inc.*, 136 F.Supp.2d 1096, 1107 (C.D. Cal. 2001).

At a minimum, Salem violated the express terms of the Injunction by (1) destroying evidence and (2) failing to disclose to PerkinElmer everyone she disclosed or transferred PerkinElmer's proprietary information, and (3) failing to turn over to BAH *all* devices in her possession containing data or documents she took from PerkinElmer. Moreover, provided that BAH cannot gain access to her gmail account Salem represented that she was closing, Salem has also failed to permit BAH to access her personal email and cloud-based storage accounts. Not only has she violated the express terms of the Injunction, she has done so willfully. She has even gone as far as to declare that she would not cooperate with the Court and would shut off all contact from the Court.

Because Salem is not making "every reasonable effort" to comply with the Injunction, she should be held in contempt. *Federal Trade Commission*, 136 F.Supp.2d at 1107.

---

[6] As of the date this Motion was filed BAH has not yet concluded its investigation into the devices Salem turned over on May 19, 2021 or conclusively determined it has not been able to access her gmail account. Dreger Decl., ¶ 6.

### 3. Salem's Conduct Is Inconsistent With A Good Faith and Reasonable Interpretation of the Injunction

Salem has no basis to argue that she violated the Injunction based on a good faith and reasonable interpretation of the Injunction. The Injunction is clear in its terms. Salem simply chose to disregard them.

### 4. The Evidence of Salem's Violations Is Clear and Convincing

"Clear and convincing evidence means evidence sufficient to support a finding of high probability." *Boyle v. Lorimar Prods.*, Nos. 91-56381, 91-56488, 1994 U.S. App. LEXIS 888, at *2 (9th Cir. Jan. 11, 1994). PerkinElmer has provided BAH reports, sworn declarations, and Salem's own testimony showing that she refuses to comply with the Injunction. This evidence is clear and convincing. *See Dominguez v. Osorio*, 2017 U.S. Dist. LEXIS 230132, *6 (C.D. Cal. June 6, 2017) (exhibits showing the defendants' advertisement using plaintiff's trademark was clear and convincing evidence that defendants had violated the terms of the injunction).

## C. The Court Should Levy a Coercive Fine Until Salem Complies With the Injunction

A coercive civil contempt sanction is needed to ensure that Salem will comply with the Injunction. *United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999); *Reed v. Fannie Mae*, 2019 U.S. Dist. LEXIS 221041, at *7-8 (C.D. Cal. Dec. 4, 2019). "One of the paradigmatic civil contempt sanctions is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order." *United States v. Ayres*, 166 F.3d at 995. The factors to be considered by the Court in imposing a coercive civil contempt sanction include the harm from noncompliance; the probable effectiveness of the sanction; and the contemnor's willfulness in disregarding the court's order. *See United States v. United Mine Workers of America* (1947) 330 U.S. 258, 303-304.

Salem's flagrant and willful violation of the Injunction greatly undermines the foundation of the Court's authority. *Reed v. Fannie Mae*, 2019 U.S. Dist. LEXIS 221041,

at *7-8 ("Cabrera's repeated refusals to comply with a court order threatens the very foundation of the court's authority.").

Moreover, a coercive sanction is necessary to deter Salem's brazen disregard of the Court's Injunction. PerkinElmer first insisted that she comply by giving BAH the devices and access to her emails. But she persisted with not just withholding vital evidence but also by actively destroying evidence.

Salem refuses to fully comply with the Injunction. This defiance warrants a coercive civil contempt sanction. *See Reed v. Fannie Mae*, 2019 U.S. Dist. LEXIS 221041, *7 (C.D. Cal. December 4, 2019) (imposing coercive sanction considering defendant's "brazen" disregard of the injunction). Further, a coercive fine appears to be the only way to coerce Salem into fully complying with the Injunction. *United States v. Ayres*, 166 F.3d at 995.

As a result, the Court should hold Salem in civil contempt and levy a coercive monetary sanction of $500 per day payable to the Court unless, within five days of the Court's order holding Salem in contempt, Salem files a report under oath establishing full and complete compliance with the Injunction.

### D.    <u>The Court Should Award PerkinElmer its Attorneys' Fees</u>

An award of attorney fees for civil contempt is within the District Court's discretion. *Harcourt Brace Jovanovich Legal & Prof'l Publications, Inc. v. Multistate Legal Studies, Inc.* (9th Cir. 1994) 26 F.3d 948, 953. The Court may award attorney fees as a remedial measure. *Nat'l Comm'n v. Cal. Crane Sch. Inc.*, No. CV 08-05440-JVS (ANx), 2010 U.S. Dist. LEXIS 148691, at *3 (C.D. Cal. May 19, 2010). "Where the moving party has incurred time and expense filing in a motion to enforce compliance with a court order, and the contemnor has taken no steps to comply with the order, an attorneys' fees award is particularly appropriate." *China Cent. Tv v. Create New Tech. (HK) Ltd.*, 2015 U.S. Dist. LEXIS 152218, *17 (C.D. Cal. November 4, 2015).

Salem's persistent and brazen disregard of the Injunction terms has required PerkinElmer's attendance at a Status Conference with the Magistrate Judge and, filing

of this Motion. Salem should have to pay PerkinElmer reasonable attorney fees in the amount of $9,464.50 incurred in bringing this Motion and attending the Status Conference re Salem's non-compliance with the Injunction. Declaration of Kelli M. Dreger, ¶ 7; Declaration of James P. Carter, ¶¶ 3-4.

## IV.    <u>CONCLUSION</u>

PerkinElmer requests that the Court issue an order to show cause why Salem should not be adjudged in contempt of the Injunction. Upon finding Salem in contempt, PerkinElmer respectfully requests that the Court levy a coercive monetary sanction in the amount of $500 per day payable to the Court unless, within five days of the Court's order holding Salem in contempt, Salem file a report under oath establishing full and complete compliance with the Injunction. PerkinElmer also requests that the Court award attorneys' fees incurred enforcing the Injunction.

Dated: June 4, 2021                         JACKSON LEWIS P.C.


                                            _/s/ Kelli M. Dreger_
                                            James P. Carter
                                            Kelli M. Dreger

                                            Attorneys for Plaintiffs
                                            PERKINELMER HEALTH SCIENCES,
                                            INC., PERKINELMER GENETICS, INC.,
                                            and PERKINLEMER, INC.

4827-9476-3500, v. 2